381 F.2d 686
 UNITED STATES of America to the Use of STANDARD OIL COMPANY
OF CALIFORNIA, a corporation, Appellant,
Cross-Appellant, and Cross-Appellee,
v.
NATT McDOUGALL COMPANY, a corporation, and Glens Falls
Insurance Company, a corporation, Appellees, Harms
Pacific Transport, Inc., a corporation,
Appellant, Cross-Appellant,
and Cross-Appellee.
 Nos. 21461, 21461-A.
 United States Court of Appeals Ninth Circuit.
 Aug. 9, 1967.
 
 Duane Vergeer, Thomas Cavanaugh, Vergeer, Samuels, Cavanaugh & Roehr, Portland, Or., Robert R. Redman, Gavin, Robinson, Kendrick, Redman & Mays, Yakima, Wash., for appellant Harms Pacific Transport, Inc.
 William V. Kelley, John E. Heath Jr., Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., for appellant Standard Oil co. of California.
 Hart Snyder, McKevitt, Snyder & Thomas, Spokane, Wash., for appellee Natt McDougall Co.
 Cleveland C. Cory, Clarence R. Wicks, Richard A. Franzke, Davies, Biggs, Strayer, Stoel & Boley (Rockwood, Davies, Biggs, Strayer, Stoel & Wicks), Portland, Or., for appellee Glens Falls Ins. co.
 Before BROWNING, DUNIWAY and ELY, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 Standard Oil Company of California, the use plaintiff, filed suit in the District Court to recover sums allegedly due for petroleum products sold to Natt McDougall Company. Jurisdiction below rested upon section 2(b) of the Miller Act, 40 U.S.C. 270b(b). McDougall filed a counterclaim against Standard and a cross-complaint against Harms Pacific Transport, Inc., seeking damages resulting from its use of contaminated diesel fuel sold by Standard and delivered by Harms. McDougall alleged that Standard had breached its warranty and that Harms had been negligent. Standard then cross-complained against Harms for indemnification on McDougall's counterclaim, and Harms sought indemnification from Standard. Both of these claims of indemnity rested upon allegations of negligence. The issues before us relate only to the McDougall counterclaim and the reciprocal claims of Standard and Harms for indemnity.[1] While the evidence was, in several respects, conflicting, certain facts, undisputed, are as follows:
 
 
 2
 In 1960, McDougall entered into a contract with the United States to perform work on a railway embankment project at the Ice Harbor Dam Reservoir, in the State of Washington. McDougall then entered into a contract with Standard, Standard agreeing to sell and deliver diesel fuel and other petroleum products for use by McDougall in the performance of its government contract. Standard delivered to the job site two storage tanks and two tank trucks for McDougall's use in fueling its vehicular equipment. Harms was one of several common carriers employed by Standard to transport diesel fuel from its pipeline terminal in East Pasco, Washington, to its storage tanks at the McDougall job site. Harms delivered a load of fuel and placed it into one of the storage tanks on April 10, 1961. For this transportation, it used a truck in which it had carried a solution of ammonium nitrate three days earlier. The truck had not been cleansed properly after that delivery; consequently, the fuel delivered on April 10th, as well as the storage tank into which it was put, became contaminated. On the same day, fuel from the contaminated tank was used in two of McDougall's power shovels. Shortly afterward these shovels developed fuel system problems and had to be temporarily removed from service. Having been summoned by one Fournier, McDougall's superintendent, two representatives from Standard and Harms' terminal manager met with Fournier at the job site. At that time, April 11th, the circumstances of the delivery of the fuel, including information concerning prior use of the truck, were recounted by the Harms representative;[2] nevertheless, it was the opinion of Standard's experts that water contamination was the cause of the difficulties. Upon the basis of their mistaken conclusion, they advised McDougall that the fuel in the tank could be used safely if the bottom few inches of the liquid therein were pumped off. Harms pumped out the bottom of the tank on the evening of April 11th, and McDougall resumed use of fuel from that tank on the next day. On April 21st, almost all of McDougall's diesel equipment broke down with fuel system problems caused by the contaminated product. From the beginning, Harms has admitted that it was negligent in failing to cleanse its truck and has conceded its liability for McDougall's damages with respect to the two pieces of equipment which malfunctioned on April 10th. Standard does not question the determination that it is liable for breach of warranty.
 
 
 3
 The district judge submitted special interrogatories to the jury, which responded,
 
 
 4
 'We, the jury, find the total damage sustained by Natt mcDougall Company from fuel contamination in 1961 is $228,764.59. 'We the jury find that the total damage sustained by Natt McDougall Company from the use of contaminated fuel on April 10 and 11, 1961, is $2220.00. 'We, the jury, find that Standard Oil Company of California is entitled to indemnity from Harms Pacific Transport, Inc., in the sum of $91,505.84. 'We, the jury, find that Natt McDougall Company was not (Was) (Was not) guilty of negligence in continuing the use of the fuel after April 11, 1961. 'We, the jury find that Natt McDougall Company did not assume (Did) (Did not) the risk of the use of the fuel after April 11, 1961.'
 
 
 5
 The judgment which was entered upon these verdicts awarded McDougall $228,764.59 against Standard and Harms, jointly and severally. Additionally it granted to Standard indemnity from Harms to the extent of $91,505.84. Both Standard and Harms appeal.
 
 
 6
 While Standard does not dispute its liability to McDougall for breach of warranty, it does attack the jury's finding as to the amount of damages sustained by McDougall. It contends that certain portions of the award were too speculative and that others included items for which double recovery was allowed. Our review of the evidence satisfies us that these contentions are without merit. McDougall's judgment against Standared is affirmed. McDougall's judgment against Standard of the District Court judgment which fix its liability to McDougall and Standard. While admitting its negligence, harms contends that its liability is limited to $2220, the damage which McDougall was found to have suffered on April 10th and 11th, before Standard's representatives were consulted and communicated their advice. Its theory is that Standard was negligent in advising McDougall that the fuel could be used safely and that that superseding negligence broke the chain of causation between Harms' negligence and the damage to McDougall's equipment which became apparent only after use of the fuel was resumed. Put another way, Harms urges that its negligence was not a proximate cause of that subsequent damage. it urges application of the Washington rule on intervening or, as it is sometimes called, superseding cause, articulated in Qualls v. Golden Arrow Farms, 47 Wash.2d 599, 288 P.2d 1090 (1955). There it was held that when the original negligence of a defendant is followed by an independent act of a third person, which results in a direct injury to a plaintiff, the defendant's negligence may nevertheless constitute the proximate cause of such damage if, in the ordinary course of events, the defendant should have known that the intervening act was likely to happen. If, however, the intervening act was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, his original negligence cannot be said to be the proximate cause of the final injury. This principle of tort law is generally accepted.[3]
 
 
 7
 Harms' principal contention here is that it was deprived of fair consideration of its position by erroneous instructions to the jury to which it directed timely objection. The instructions bearing upon the issue were as follows:
 
 
 8
 'In the sequence of events, following an original injury one or more incidents may occur that aggravate the damage. Such an event is a contributing event. It may consist of a mistake of judgment, or failure to act of another party, or of some other incident. 'If such contributing event itself, as well as the condition to which it contributes, is a proximate result of the original injury, then no matter how greatly it aggravates damages, it does not in law displace that original injury as the approximate cause of and result. 'If you find that Harms is liable for the original injury to Natt McDougall, it is liable not only for such injury, but also for any aggravation or additional injury due to a later event which was proximately caused by the original injury, provided, however, that Natt McDougall's own negligence did not contribute to the later event. 'If Harms is liable for the original contamination of diesel fuel used on April 10th and 11th, but Standard was negligent in approving its use thereafter, Harms and Standard are liable not only for the damages resulting to and including April 11th, but for all damages thereafter, providing that Natt McDougall's own negligence did not contribute to such damages incurred subsequent to April 11, 1961. 'Proximate cause has previously been defined for you. There can be more than one proximate cause of an injury. Negligence of two or more persons may concur to proximately cause an injury. It is no defense for one such person that some other person's negligence may have concurred to cause an injury, if the negligence of each is a proximate cause thereof. 'However, you are instructed that the law also recognizes that neligence of one person may be superseded in its effect by the negligence of another, if such other's negligence takes place later, and was not reasonably foreseeable and was not the product of the original negligence.'
 
 
 9
 The instruction which we have emphasized by italics is clearly erroneous. It required the jury to determine that Harms, having been negligent in the first instance, was liable for all damages occurring thereafter, whether or not Standard's intervening negligence, if any, should have been foreseen. Standard and McDougall do not contend that this particular instruction was proper. They urge that the error was cured by accurate statement of the law of intervening cause contained in the last instruction quoted above, and that the instructions, as a whole, cannot be deemed to be prejudicially erroneous. We disagree. Unlike the last instruction, phrased in generalities, the erroneous charge states flatly that 'Harms * * * (is) liable * * * for all damages thereafter * * *.' The impact of an erroneous instruction so specifically phrased was emphasized by Mr. Justice Frankfurter in Bollenbach v. United States, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946),
 
 
 10
 'If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and unilluminating abstract charge.'
 
 
 11
 The force of this rule is not diminished because the 'unexceptionable' but 'abstract' instruction in this case followed, rather than preceded, the incorrect statement of law.
 
 
 12
 Standard and McDougall argue further that, though the instructions on intervening cause may have been erroneous, Harms cannot complain, because, they say, the doctrine of intervening cause 'has no place in this case.' The first reason offered in support of that assertion is that all McDougall's machines had been fueled with diesel from the contaminated tank at least once prior to the time that Standard's representatives advised that the fuel could be used safely, and that, therefore, all McDougall's ultimate damage had already been caused. The argument is not supported factually. There was conflicting testimony on the issue, and it cannot be seen from the special verdicts that the jury found the facts to be as Standard and McDougall now represent them. The second reason is also invalid. It is based on the contention that since a verdict of indemnity was awarded in Standard's favor, the jury must have determined that Standard had not been negligent. The jury could not have rendered such a verdict, say Standard and McDougall, without having determined that Standard was free of fault. One obvious weakness of this contention is that the verdict of indemnity was in a lesser amount than the total damage suffered by McDougall, for which total damage Standard, along with Harms, was held liable.[4] All parties have, in the briefs before us, attempted to explain the disparity.[5] The indemnity verdict awarded to Standard, $91,505.84, is, within less than one-half of one cent, equal to 40 percent of the total amount of damage found to have been suffered by McDougall. The disparity between that total damage and the indemnity award is most plausibly explained on the theory that the jury somehow determined to apportion liability between Standard and Harms at the respective rates of 60 percent and 40 percent. The indemnity verdict, then, rather than compelling the assumption that the jury concluded that Standard was free of negligence, actually supports the inference that the jury made a determination to the contrary.[6]
 
 
 13
 The case, insofar as it involves claims against Harms in excess of $2220, must be retried.[7]
 
 
 14
 Affirmed in part; reversed and remanded in part.
 
 
 
 [1]
 The district judge directed a verdict in favor of Standard on its Miller Act claim. That order is not challenged on this appeal
 
 
 [2]
 There is, understandably, some conflict in the testimony pertaining to the oral conversations. The record contains a memorandum written by Keasal, one of Standard's representatives, to his employer. It is dated April 12, 1961, the day after the conference, and reads,
 'Subject: Product contamination, Chevron diesel, our file, fuel, Natt McDougall Company, Snake River, your file, junction delivery from Standard Oil East Pasco Terminal on Monday morning, April 10th, at 7:30 A.M., Harms Transport delivered 6900 gallons Chevron diesel fuel to contractor storage at Snake River Junction site. In the afternoon of April 10, contractor service man filled two shovels from this storage, and immediately the machines stopped. The storage tanks on the machines were drained, and fuel filters replaced, as there was a definite indication of contamination of the fuel, ammonia smell detected. Subsequent investigation by R. Keasal, Jr., R. F. Campbell, and W. Wilson (Harms Pacific Dispatcher) revealed that truck and trailer had hauled a load of ammonium nitrate fertilizer immediately prior to this delivery and apparently was not thoroughly cleaned. Samples were taken, showing definite contamination. These are now at the Pasco District Sales Office. Mr. Wilson of Harms Pacific, met Mr. Pete Fornier project manager for Natt McDougall Co. and assured him that their company would reimburse for the product dumped and also related costs (injectors A.T.C.). Mr. Fornier was very pleased with the promptness and results of the investigation, and assured us that he would continue to purchase our product on this job. There is apparently no damage to this equipment at this time. A copy to B.F.'
 
 
 [3]
 A model jury instruction incorporating the rule is found in 1 California Jury Instructions, Civil (B.A.J.I.) No. 104-C:
 'When it appears that the conduct of two or more persons, acting independently and at different times, created or contributed to the circumstances out of which injury resulted, the question of proximate or remote cause requires the jury to consider thoughtfully the relationship between the conduct of one person, whom, for convenience, I shall call the original actor; the conduct of another, whom I shall call the secondary actor; and the sequence of events leading to the injury. 'It is not enough merely to say that the accident would not have happened had it not been for what was done or was not done by one of the parties. It may or may not be that the effect which ordinarily would have been expected to flow from certain conduct was changed by what we call an efficient intervening cause. 'Of course, the first question to be answered is whether either of the parties was negligent. If either party was not negligent, then (he) (or) (she) may not be held liable even if (his) (or) (her) conduct was a proximate cause of the accident. If the original actor was not negligent but the secondary actor was, the question narrows down to whether that secondary conduct was a proximate cause of injury. (There remains, of course, the question of contributory negligence.) 'If the original actor was negligent, then you have to consider whether the effect reasonably to be expected from that negligence was altered by an efficient intervening cause. Was the conduct of the secondary actor an efficient intervening agency which alone was the proximate cause of the injury? Or was that later conduct merely a concurring cause, and the conduct of each actor a proximate cause of the injury? 'As between those two possibilities, the test is this: If the original actor foresaw, or by exercising ordinary care would have foreseen, the probability of the conduct of the secondary actor and the probability that the original conduct plus the secondary conduct would result in injury to a third person, then the conduct of both the original and secondary actors concurred in proximately causing that injury. But if those probable results were not thus foreseen or foreseeable, and if the immediate cause of the injury was the conduct of the secondary actor, then it may not be held that the conduct of the original actor was a proximate cause.'
 See also Restatement (Second), Torts 452 (1965).
 
 
 [4]
 Standard challenges this aspect of the indemnity award, arguing that it was entitled to indemnity in an amount equal to the judgment rendered in favor of McDougall. In light of our disposition of Harms' appeal, we do not reach this question
 
 
 [5]
 Standard's explanation is that the jury fixed the amount 'perhaps on some mistaken theory of division of damages coupled with a simple mistake in arithmetic because of the lateness of the hour when the verdict was returned * * *.' McDougall's theory, while not so patently speculative as that of Standard, still requires that we assume too much. McDougall surmises that the jury found that Standard, while not negligent in advising resumption of use of the fuel on April 11th, was negligent on April 22nd in prescribing a certain method of cleaning McDougall's equipment. The indemnity award of $91,505.84, says McDougall, represented the jury's determination of the amount of damages sustained by McDougall up to the time Standard acted negligently on April 22nd. Harms' theory, probably more nearly correct, is that the jury attempted to apportion damages on the basis of its own idea of comparative negligence
 
 
 [6]
 There is much evidence in support of the contention that Standard was negligent. In sum, it reveals that Standard's representatives were summoned for the purpose of securing their advice concerning a subject about which they had, or should have had, considerable expertise. There is persuasive evidence to the effect that they were informed by Harms' terminal manager at the time of their initial investigation of the probable source of the contamination. See footnote 2, supra. Despite this knowledge, Standard's experts misdiagnosed the difficulty and were responsible for the mistaken corrective course which followed
 
 
 [7]
 During oral argument in our court, counsel for McDougall represented that, should there be reversal of its judgment against Harms and affirmance of its judgment against Standard, it would not pursue retrial against Harms. It would thus appear that the retrial may be confined to the issue of Harms' liability to Standard on the latter's claim for indemnity